DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Wood County Court of Common Pleas after defendant-appellant, Anthony King, was found guilty by a jury of receiving stolen property and failing to comply with an order of a police officer. From that judgment, appellant now raises the following assignments of error:
 {¶ 2} "I. The verdict of the jury was against the manifest weight of the evidence in that it was not proved beyond a reasonable doubt that Appellant was the driver of the car involved in the incident leading to the instant charges.
 {¶ 3} "II. The Trial Court erred to Appellant's prejudice and denied him due process when it failed to recognize its discretion, pursuant to O.R.C. 2945.10(D), to allow reopening of Appellant's case to permit rebuttal testimony by two witnesses who would have contradicted crucial testimony of a police officer.
 {¶ 4} "III. The Trial Court erred to Appellant's prejudice by not granting, or even sua sponte, a more substantial continuance to secure the appearance of a material and essential witness who was in contempt of a court order to appear at trial.
 {¶ 5} "IV. Appellant was denied effective assistance of counsel when said counsel failed to vigorously insist on a more substantial continuance to secure the appearance of a material and essential witness who had the potential of providing testimony that would have absolved appellant from guilt."
 {¶ 6} On December 21, 2000, appellant was indicted and charged with one count of failing to comply with the order of a police officer, in violation of R.C. 2921.331(B), and one count of receiving stolen property, in violation of R.C. 2913.51, as a result of his apprehension in the early morning hours of November 3, 2000. Appellant pled not guilty to the charges and the case was scheduled for a jury trial. Subsequently, Christopher McIntyre was subpoenaed to testify at the trial at the request of both the prosecuting attorney and defense counsel. On the first day of the trial, however, McIntyre failed to appear. In addition, defense counsel notified the court that appellant had spoken with McIntyre who advised appellant that he would not appear to testify. The court, therefore, ordered the Wood County Sheriff to locate McIntyre and bring him to court. During the following two days of trial, McIntyre never appeared. At that trial, the following evidence was presented.
 {¶ 7} At approximately 2:00 a.m. on November 3, 2000, Kevin Frelin went to bed in his home on Walker Avenue, Toledo, Ohio. At that time, Frelin's maroon 1986 Delta 88 Oldsmobile was parked in front of his house. The following morning, Frelin awoke at approximately 10:00 a.m. and found that his car was missing.
 {¶ 8} Earlier that morning, at around 4:00 a.m., Patrolman John Romstadt of the Northwood Police Department, was dispatched to the area of Lot 99 at 1905 Tracy Road in Northwood, Wood County, Ohio, after receiving a call that there was a disturbance at that address. When he arrived, Patrolman Romstadt came upon a number of people standing outside of a trailer. A fight had broken out at a party and someone told the officer that two black males involved in the fight had just left in a maroon car. Patrolman Romstadt then radioed the information to his back-up, Officer Wayne Phillips, who responded that a vehicle matching Romstadt's description had just passed him heading east. Officer Phillips then attempted to stop the vehicle but the driver of the car took off leading Officer Phillips and Patrolman Romstadt on a high speed chase during which the suspect failed to stop for red lights and stop signs and entered I-280 going the wrong way on a southbound exit ramp. Patrolman Romstadt estimated that the suspect was driving at between 100 and 120 miles per hour.
 {¶ 9} Subsequently, the suspect vehicle crashed into a fence at an Ohio Department of Transportation (ODOT) building. Patrolman Romstadt testified that he was approximately 50 feet behind the suspect vehicle when it came to rest. Similarly, Officer Phillips testified that he was approximately 75 yards behind the vehicle when it came to rest. Patrolman Romstadt and Officer Phillips then both testified that after the suspect vehicle came to rest, the driver, a black male, exited the vehicle from the driver's side front door, crossed over the hood of the car, jumped over the ODOT fence and took off running. During the driver's escape, one of his shoes fell off and remained on the hood of the car. A second black male exited the passenger's side front door of the vehicle and took off running down a ditch bank. After the second suspect crossed the ditch, Patrolman Romstadt immediately apprehended him. That suspect was later identified as Christopher McIntyre. Finally, a third suspect, a female identified as Andrea Zemenski, exited the back door of the vehicle and did not attempt to escape. During a subsequent search of the area, officers discovered a second shoe which matched the shoe found on the hood of the car. Approximately one hour after the suspect driver ran from the scene, appellant was discovered behind a nearby barn. He was not wearing shoes.
 {¶ 10} It was subsequently determined that the car involved in the high speed chase belonged to Kevin Frelin and had been stolen. In addition, the car sustained substantial damage as a result of its theft and the crash into the ODOT fence and had to be towed from the scene. In particular, it sustained front-end damage, flat tires, and the steering column had been stripped.
 {¶ 11} Upon his apprehension, appellant immediately told the officers that he was not driving the car. It was also apparent to the officers that appellant had been drinking, although one of the arresting officers, Patrolman Jason Lenhardt, testified that appellant did not appear to be highly intoxicated. Testifying in his own defense, appellant stated that on the evening of November 2 and into the early morning of November 3, 2000, he was out drinking at a bar with his ex-girlfriend, Andrea Zemenski. After the bar closed, he, Andrea, and a friend named Liz went to Liz's house for a party. That house was the trailer where the fight broke out. Appellant claimed that he was not involved in the fight and that before the fight broke out he had called Chris McIntyre for a ride home. After the fight erupted, McIntyre arrived. Appellant then got in the back seat with Andrea, pushed her head between her knees to protect her from flying beer bottles and McIntyre drove off. Appellant testified that it soon became apparent that they were being chased by the police, but when he asked McIntyre to stop, McIntyre said that they had to get out of here and kept driving. When the car crashed, appellant exited from the back seat of the car and took off running, losing his shoes in the process. Subsequently, however, he was apprehended. From the time of his arrest, and throughout the trial below, appellant insisted that McIntyre, not he, was the driver of the car.
 {¶ 12} Andrea Zemenski was also arrested after the high-speed chase. After exiting the back seat of the car, she did not try to escape. She testified at the trial below, however, that at the time of her arrest she was highly intoxicated and that she could not recall many of the specifics of that night. Zemenski did testify, however, that she did remember that appellant was in the back seat of the car with her, holding her head down and that it wasn't clear to her who was driving the car until the car stopped and Chris McIntyre was arrested. Zemenski further testified that while she was in police custody, officers tried to get her to say that appellant had been driving the car and that she was charged with obstructing official business for failing to provide appellant's name to the officers. On rebuttal, however, the state presented the testimony of Officer Glen Goss of the Northwood Police Department who stated that upon her arrest Zemenski implicated appellant as the driver of the car but that when appellant and Zemenski were in the same room at the police station, Zemenski denied that appellant was the driver. Officer Goss further testified that although Zemenski appeared to have been drinking prior to her arrest, she did not appear to be overly intoxicated and that she was coherent.
 {¶ 13} At the conclusion of the state's rebuttal, appellant moved to reopen his case in order to counteract Officer Goss's rebuttal testimony. The court denied the motion but allowed appellant to proffer the testimony. Out of the presence of the jury, appellant then recalled Zemenski to the stand. Zemenski denied ever telling Officer Goss or any other officer that appellant was driving the car. Appellant also proffered the testimony of Jean Zemenski, Andrea's mother. Jean testified that when she picked up Andrea at the police station at approximately 7:00 a.m. on November 3, 2000, Andrea was intoxicated. smelled of alcohol, and was staggering.
 {¶ 14} The jury subsequently found appellant guilty of both receiving stolen property and failing to comply with an order of a police officer and the court sentenced him on those convictions.
 {¶ 15} Appellant first asserts that his conviction was against the manifest weight of the evidence because the state did not prove beyond a reasonable doubt that he was the driver of the car involved in the incident.
 {¶ 16} In evaluating a case under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386 The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 17} Appellant was convicted of failing to comply with an order of a police officer in violation of R.C. 2921.331(B) and receiving stolen property in violation of R.C. 2913.51. R.C. 2921.331(B) provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Accordingly, to establish that appellant committed this offense, the state had to prove that appellant was the driver of the car. Although none of the officers who testified below could say that they saw appellant behind the wheel of the car as it was eluding the officers' signals, both Patrolman Romstadt and Officer Phillips testified that they saw the driver exit the vehicle from the front driver's side door of the car, jump over the hood of the car, lose his shoe on the hood of the car, and jump over the fence to avoid capture. Appellant was subsequently found not wearing shoes. In addition, Patrolman Romstadt testified that he was certain that the driver exited from the driver's side front door of the car because that door was left open. Finally, both of the officers also testified that the front seat passenger exited from the front seat passenger door of the car, crossed the hood of the car and took off running down a ditch. That suspect never left their sight and was apprehended shortly thereafter. That suspect was Chris McIntyre. Given this evidence, we cannot say that the jury clearly lost its way in concluding that appellant was the driver of the car and that he was guilty of failing to comply with the order of a police officer.
 {¶ 18} R.C. 2913.51(A) reads: "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." At the trial below, evidence established that the car involved in the high speed chase was stolen earlier that morning. Although appellant was not charged with that theft offense, photos of the steering column of the car showed that it had been stripped. In addition, appellant had known McIntyre for seven years and had called him for a ride. Presumably, he should have known what car McIntyre drove. Given that it was reasonable for the jury to conclude that appellant was the driver of the car, we further find that the jury did not lose its way in concluding that appellant knew or had reasonable cause to believe that the car was stolen. Accordingly, the convictions were not against the manifest weight of the evidence and appellant's first assignment of error is not well-taken.
 {¶ 19} In his second assignment of error, appellant asserts that the trial court abused its discretion by denying his request to reopen his case after the state presented the rebuttal testimony of Officer Goss.
 {¶ 20} The general rule in Ohio is that "the question of opening up a case for the presentation of further testimony is within the sound discretion of the trial court, and the court's action in that regard will not be disturbed on appeal unless under the circumstances it amounted to an abuse of discretion." Columbus v. Grant (1981), 1 Ohio App.3d 96, 97. In the present case, appellant sought to reopen his case in order to present evidence to counter the rebuttal testimony of Officer Goss that Andrea Zemenski, while at the police station following her arrest, identified appellant as the driver of the car. Appellant sought to present the testimony of Andrea Zemenski denying that she ever implicated appellant as the driver and the testimony of Andrea's mother, Jean Zemenski, that even as of 7:00 a.m. on the morning of Andrea's arrest, Andrea was so intoxicated she staggered and smelled of alcohol.
 {¶ 21} With regard to the proffered testimony of Jean Zemenski, this evidence was clearly cumulative. Andrea had already testified that she was heavily intoxicated on the night in question, so much so that she had passed out during the high speed chase and when she was in the back seat of the police cruiser. The court did not err in refusing to allow appellant to submit further evidence of her intoxication to counter the testimony of Officer Goss that Andrea was not overly intoxicated.
 {¶ 22} As for Andrea's testimony denying that she told officers that appellant was driving the car, she had already testified that she did not remember exactly what she told officers after her arrest and that she could not recall if officers tried to get her to implicate appellant as the driver of the car. Moreover, Andrea testified that she was charged with obstructing official business for failing to name appellant as the driver of the car. This fact alone makes Officer Goss's testimony that Andrea implicated appellant as the driver questionable. Why would Andrea have been charged with obstructing official business if she had implicated appellant? Any further testimony by Andrea that she did not implicate appellant would have been cumulative and unnecessary. Accordingly, we cannot say that the trial court abused its discretion in denying appellant's motion to reopen his case and the second assignment of error is not well taken.
 {¶ 23} Appellant's third and fourth assignments of error are interrelated and will be discussed together. These assignments of error address the court's and parties' attempts to compel Chris McIntyre to testify at the trial below. Appellant asserts that the trial court erred in not granting, or in failing to sua sponte order, a more substantial continuance to secure the appearance of McIntyre at the trial below and that his trial counsel was ineffective for failing to more vigorously insist on a more substantial continuance.
 {¶ 24} A trial court has broad discretion in determining whether to grant or deny a continuance and a refusal of a continuance does not constitute grounds for reversal unless there is an abuse of that discretion. State v. Bayless (1976), 48 Ohio St.2d 73, 101, vacated in part on other grounds by Bayless v. Ohio (1978), 438 U.S. 911. An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157. "Whether the court has abused its discretion depends upon the circumstances, `particularly *** the reasons presented to the trial judge at the time the request is denied.'" State v. Powell (1990), 49 Ohio St.3d 255, 259, quoting Ungarv. Sarafite (1964), 376 U.S. 575, 589.
 {¶ 25} When ruling on a motion to continue, a trial court should consider: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstances which caused the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case. State v.Unger (1981), 67 Ohio St.2d 65, 67-68.
 {¶ 26} During the proceedings below both appellant and the state called Christopher McIntyre to testify. The subpoena issued by defense counsel was returned with a notation that personal service had been made by the Lucas County Sheriff. The subpoena issued by the state has no notation regarding the return of service but indicates that service was made by U.S. Mail. On the first day of trial, McIntyre failed to appear and the court issued an order finding that he had been served with a subpoena and ordering the Wood County Sheriff to find McIntyre and bring him to the Wood County Common Pleas Court for the trial. At the end of the first day of trial, the parties discussed the possibility of McIntyre failing to appear on the second day of trial and defense counsel stated that in that event, he would request a reasonable continuance, "whether it be for a period of time tomorrow or another day" to compel McIntyre's appearance. The state indicated that it would not object so long as the continuance was reasonable. The court then indicated that if McIntyre did not appear, the court would adjourn for one day to give the sheriff until that time to find him.
 {¶ 27} The following morning, McIntyre did not appear. Appellant's counsel then asked for a full day's continuance to attempt to secure McIntyre's appearance. Counsel also revealed to the court, however, that he had no additional information that would assist the deputies in locating McIntyre. At that time, the state objected to a continuance of a full day but suggested a continuance of one-half day. The court agreed with the state, noting that "[a] delay of — recess of a full day I think just doesn't give me anymore prospect of finding Mr. McIntyre than a few more hours yet this morning." The court then adjourned until later that afternoon.
 {¶ 28} When the court reconvened, McIntyre had not been located. Appellant's counsel did inform the court, however, that his investigator had gone to McIntyre's aunt's house and had been told by a neighbor that McIntyre did live there. Nevertheless, when the investigator knocked on the door no one answered. Given this information, the court elected to proceed with the case, instructing the jury that the best efforts of both the state and the defense had failed to locate McIntyre.
 {¶ 29} Under these circumstances, we cannot conclude that the trial court erred in failing to grant appellant, or sua sponte order, a longer continuance. Although the requested continuance was for legitimate reasons, there is nothing in the record to suggest that a longer continuance would have secured McIntyre's appearance.
 {¶ 30} Similarly, we cannot conclude under these circumstances that appellant was denied the effective assistance of counsel, as that standard is set forth in State v. Bradley (1989), 42 Ohio St.3d 136. Appellant's trial counsel sent his own investigator to try to locate McIntyre and argued diligently for a further continuance. As it is not clear that a further continuance would have secured McIntyre's appearance, it is further not clear that McIntyre's appearance would have guaranteed appellant's acquittal.
 {¶ 31} The third and fourth assignments of error are therefore not well-taken.
 {¶ 32} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Wood County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
Handwork, P.J., and Knepper, J., concur.